## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EDWARD AMADOR AND WAYNE WILKE,    ) | |
| ) | |
| **Plaintiffs,**    ) | |
| **v.**    ) | **Case No. 15-2616-JAR-GLR** |
| ) | |
| BOILERMAKER-BLACKSMITH    ) | |
| NATIONAL PENSION TRUST,    ) | |
| ) | |
| **Defendant.**    ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

Plaintiffs Edward Amador and Wayne Wilke filed this *pro se* lawsuit against

Boilermaker-Blacksmith National Pension Trust (the "Trust") alleging wrongful denial of

benefits governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1001 *et seq*.  This matter is before the Court on Defendant's Motion for Summary

Judgment (Doc. 29).  For the reasons explained in detail below, the Court grants Defendant's

motion.

## I.      Procedural History and Factual Background

Defendant Trust is a jointly-trusteed pension plan administered by a Board of Trustees

composed of representatives of the International Brotherhood of Boilermakers, Iron Ship

Builders, Blacksmiths, Forgers and Helpers and representatives of employers.[1]  The Trust is

administered under the Twelfth Restatement of the Pension Plan Document (the "Plan").[2]  The

Twelfth Restatement of the Rules and Regulations of the Plan was in effect when the Trust

---

[1]King Aff., Doc. 30, Ex. D ¶ 2.

[2]*Id.* ¶ 9.

received Notices of Levy issued by the Internal Revenue Service ("IRS") for Plaintiffs and during their subsequent appeals.[3]

Edward Amador is a participant in the Trust and retired on an Early Retirement Pension effective June 1, 2008.[4]  Wayne Wilke is a participant in the Trust and retired on an Early Retirement Pension effective February 1, 2009.[5]

Section 10.01 of the Plan states in relevant part:

**Claims and Appeals Procedure.**

. . .

(e)     **Filing of Appeal**.  Any claimant who applies for benefits and is ruled ineligible, or who believes he or she did not receive the full amount of benefits to which he or she is entitled, or who is otherwise subject to an adverse benefit determination, shall have the right to appeal to the Board of Trustee, requesting review of the denial or otherwise adverse benefit determination.

. . .

All appeals must be made in writing and must state the grounds on which the claimant believes he or she is entitled to relief.  The written notice of appeal must be sent to the Trustees within 60 days after notification of the denial of the application for benefits (or claim).  Failure to file a written notice of appeal within the time period described will operate as a complete waiver of and bar to the right to appeal, and preclude judicial review.

. . .

(i)     **Trustees' Authority**.  The Trustees shall have complete discretion to construe, interpret, and apply all terms and provisions of this Plan document and the Trust Agreement in resolving any dispute in accordance with these rules, including the discretion to determine the standard of proof required.  The Trustees' findings and their determination of any dispute shall be final and binding upon all parties to the dispute.  No action may be brought for benefits provided by this Plan document or any amendment or modification, or to enforce any right granted under the Plan, until after the claim has been submitted to and

---

[3]*Id.*

[4]AR at 146–47. "AR" citations refer to the Administrative Record in this case, which is contained in Doc. 30, Ex. D.

[5]AR at 148.

determined by the Trustees.  The decision of the Trustees shall receive judicial deference unless the Trustees have abused the discretion granted to them under the Plan document and Trust Agreement.

All questions or controversies, of whatever character, arising in any manner or between any parties or persons in connection with this Plan or its operation, whether as to any claim for benefits, or as to the construction of language or meaning of this Plan document or the Trust Agreement, or as to any writing, decision, instrument, or account in connection with the operation of this Plan, shall be submitted to the Trustees for decision.  The decision of the Trustees shall be final and binding upon all persons dealing with the Plan or the Trust or claiming any benefit under the Plan. [6]

Section 11.07 of the Plan states:

**Laws Applicable.**  This Plan is intended to comply with the Employee Retirement Income Security Act of 1974 and with the requirements for tax qualification under the Code and all regulations thereunder, and is to be interpreted and applied consistent with that intent.[7]

On July 24, 2012, the Trust received a Notice of Levy on Wages, Salary and Other Income ("Notice of Levy") from the IRS regarding Amador.[8]  On July 26, 2012, the Trust sent a letter to Amador along with a copy of the Notice of Levy for completion.[9]  The letter stated that Amador's pension benefit checks would be held pending receipt of the completed forms.[10] Amador never completed and returned the Notice of Levy to the Trust.[11]  Accordingly, on October 1, 2012, the Trust proceeded to honor the levy of $2,633.73 of Amador's monthly

---

[6]AR at 87–89.  "AR" citations refer to the Administrative Record in this case, which is contained in Doc. 30, Ex. D.

[7]AR at 91.

[8]AR at 149–56.

[9]AR at 157.

[10]*Id.*

[11]AR at 141.

pension benefit, based on the IRS's default Married Filing Separate with one exemption.[12]  The levy of Amador's monthly pension benefit is still in place.[13]

On December 5, 2013, the Trust received a Notice of Levy from the IRS for Wilke.[14]  On December 6, 2013, the Trust sent a letter to Wilke along with a copy of the Notice of Levy for completion.[15]  Wilke never completed and returned the Notice of Levy to the Trust.[16]  Accordingly, on March 1, 2014, the Trust proceeded to honor the levy on Wilke's entire monthly pension benefit of $4,185.97, based on the IRS 's indication that the levy was not entitled to any exemptions under section 6334(a)(9) of the Internal Revenue Code (the "Code").[17]  The levy of Wilke's monthly pension benefit is still in place.[18]

In June 2014, Plaintiffs filed a lawsuit against the Trust in the District Court of Wyandotte County, Kansas, seeking to recover benefits from the Trust and alleging violations of state trust law.  The lawsuit was removed to this Court, Case No 14-cv-2329-RDR.[19]  Judge Rogers granted the Trust's motion to dismiss on the grounds that Plaintiffs' claims are governed exclusively by ERISA, and thus Plaintiffs' state law claims were preempted by federal law.[20]  The court went on to discuss that even if Plaintiffs had brought their claims against the Trust under ERISA, their allegations were insufficient to state a claim, noting that Plaintiffs did not allege that the Trust's decision regarding their pension benefits was an abuse of discretion or

---

[12]*Id.*

[13]*Id.*

[14]AR at 158–167.

[15]AR at 168.

[16]AR at 141.

[17]*Id.*

[18]*Id.*

[19]*Amador, et al., v. Boilermaker-Blacksmith Nat'l Pension Trust*, Case No. 14-cv-2329-RDR, Doc. 1.

[20]*Id.*, Doc. 25.

arbitrary and capricious, that Plaintiffs did not allege that they had exhausted their available administrative remedies prior to filing their action, and that their claims were not plausible.[21] Plaintiffs appealed that decision to the United States Court of Appeals for the Tenth Circuit, which dismissed the appeal for lack of prosecution.[22]

On October 16, 2014, the Trust received a letter from Amador captioned "Notice of Appeal," requesting appeal of the withholding of Amador's pension benefits pursuant to the Notices of Levy.[23]  In his Notice of Appeal, Amador states that the date of the decision against him was July 26, 2012.[24]  On October 21, 2014, the Trust received a letter from Wilke captioned, "Notice of Appeal," indicating that he was appealing the Trust's decision to withhold his pension benefits dated December 6, 2013, and incorporating the arguments set forth by Amador in his Notice of Appeal.[25]  On November 11, 2014, the Trustee received a letter from James Bethel, a third-party individual authorized to act on behalf of Amador and Wilke, reiterating the arguments set forth by Amador in support of the appeal of the adverse benefit determination.[26]

The Trust denied Plaintiffs' appeals in letter decisions dated December 15, 2014.[27]  The denial letters to both Amador and Wilke stated that their respective appeals were denied for two reasons:  (1) the appeal was untimely; and (2) the Trust must honor a Notice of Levy issued by the IRS in accordance with the Plan document and the Code.[28]  Specifically, the letters stated that Section 10.01 of the Plan document requires a participant to file a written appeal within sixty

---

[21]*Id.* at 8–9.

[22]*Id.*, Doc. 31.

[23]AR at 228.

[24]*Id.*

[25]AR at 233.

[26]AR at 236.

[27]AR at 241, 244.

[28]*Id.*

(60) days after notification of the denial of the application for benefits (or claim).  Thus, Plaintiffs had sixty days from the adverse benefit determination on October 1, 2012, to file the appeal; because Plaintiffs failed to file a written appeal within sixty days of the adverse benefit determination, their appeals were untimely and therefore waived.[29]  The letters further explained that the Trust has a legal responsibility to consistently follow Plan provisions and therefore, it was the Trust's position that the reduction in Plaintiffs' pension benefits due to the Notices of Levy received from the IRS was correct according to Section 11.07 of the Plan.[30]

Plaintiffs brought the present ERISA action on February 23, 2015, alleging they were denied benefits under the Plan and that requested information was not provided as required under 29 U.S.C. § 1132(c)(1)(B).  This Court granted the Trust's motion to dismiss Plaintiffs' failure to disclose claim, and declined to dismiss the denial of benefits claim on res judicata grounds.[31]

## II.    Discussion

### A.  Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[32]  This court has acknowledged, however, that summary judgment standards are not completely suited to the court's review of the administrative record in an ERISA action.[33]  Here, the Trust does not ask the Court to determine whether material issues of fact remain for trial; it seeks

---

[29]*Id.*

[30]*Id.*

[31]Doc. 9.  Count II was dismissed without prejudice to amend to restate the failure to provide requested documents claim.  Plaintiffs elected not to amend Count II of their Complaint. Doc. 14.

[32]*See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir. 1993).

[33]*See Meyer v. UNUM Life Ins. Co. of Am.*, 96 F. Supp. 3d 1234, 1244 (D. Kan. 2015); *McNeal v. Frontier AG, Inc.*, 998 F. Supp. 2d 1037, 1040–41 (D. Kan. 2014).

review of an administrative record to determine whether the Trust unreasonably denied

Plaintiffs' appeal as untimely and alternatively, honored the IRS levies of their pension

benefits.[34]  The Court's task is to act "as an appellate court and evaluate[ ]the reasonableness of a

plan administrator or fiduciary's decision based on the evidence contained in the administrative

record."[35]

A district court reviews denial of ERISA benefits under a de novo standard "unless the

benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility

for benefits or to construe the terms of the plan."[36]  If, as here, the plan administrator has

discretion to determine eligibility for benefits and to construe plan terms, the court reviews the

administrator's actions under a "deferential standard of review."[37]  Under this standard, a court

reviews the administrator's decision for abuse of discretion.[38]

The Tenth Circuit "treats the abuse-of-discretion standard and the arbitrary-and-

capricious standard as 'interchangeable in this context,' and 'applies an arbitrary and capricious

standard to a plan administrator's actions.'"[39]  Here, the parties do not dispute that Section

10.01(i) of the Plan grants the Trustees discretion to determine eligibility for benefits, including

---

[34]*See McNeal*, 998 F. Supp. 2d at 1040.  Plaintiffs attempt to controvert Defendant's statement of material facts in four numbered paragraphs in which they purport to rebut three paragraphs of Christine King's Affidavit. Doc. 34 at 3–4. These rebuttals do not specifically contradict Defendant's factual assertions with reference to those portions of the record on which Plaintiffs rely, nor do Plaintiffs submit affidavits or other admissible evidence to refute King's Affidavit as required by D. Kan. Rule 56.1(b).  Instead, Plaintiffs' rebuttals are arguments against King's Affidavit and do not contain any facts or references to the record as required by D. Kan. Rule 56.1(d). Accordingly, the Court considers the facts presented by Defendant, which are contained in the administrative record, as undisputed.  Fed. R. Civ. P. 56(e).

[35]*McNeal*, 998 F. Supp. 2d at 1040 (citing *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579 & n.31 (10th Cir. 1994)).

[36]*LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

[37]*Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (quoting *Firestone*, 489 U.S. at 111).

[38]*Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231 (10th Cir. 2012).

[39]*Id.* at 1231–32 (quoting *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1003 & n.2 (10th Cir. 2004) (per curiam), *abrogated on other grounds by Glenn*, 554 U.S. at 118).

resolving factual disputes and interpreting and enforcing Plan provisions.  The Court therefore evaluates the Trust's decisions regarding the pension benefits subject to the Notices of Levy under an arbitrary and capricious standard or review.

The review under the arbitrary and capricious standard "is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[40]  "The decision need not be the only logical one or even the best one.  It need only be sufficiently supported by facts within the administrator's knowledge to counter a claim that it was arbitrary or capricious."[41]  The reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end."[42]

Finally, because Plaintiffs proceed *pro se*, the Court must construe their pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[43]  However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[44]  Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[45]

### B. Application

---

[40]*LaAsmar*, 605 F.3d at 796.

[41]*Meyer*, 96 F. Supp. 3d at 1245 (citing *Kimber v. Thiokoi Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999)) (citation omitted).

[42]*Kimber*, 196 F.3d at 1098 (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999), *overruled on other grounds by Glenn*, 554 U.S. at 118) (rejecting "sliding scale" approach to deferential review where benefits plan administrator is operating under a conflict of interest).

[43]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[44]*Id.*

[45]*Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

After considering the arguments set forth by Plaintiffs and giving them an opportunity to provide the Trustees all the documents in support of their position on appeal, the Trustees denied Plaintiffs' appeals on two grounds:  (1) the appeals were untimely according to the Plan document; and (2) the Trust is bound by the Plan to honor tax laws and regulations, including Notices of Levy received from the IRS.

### 1.   Whether Plaintiffs' Appeals were Untimely

The Court first considers whether the Trust abused its discretion in denying Plaintiffs' appeals as untimely.  The administrative record shows that Plaintiffs' claims for denial of benefits arose from the Notices of Levy from the IRS to the Trust concerning Plaintiffs' pension benefits.  After Plaintiffs failed to respond to the Trust's request for completed levies, it began sending their benefits to the IRS.  Specifically, effective October 1, 2012, the Trust began sending a portion of Amador's monthly benefits to the IRS; and effective March 1, 2014, the Trust began sending all of Wilke's monthly pension benefits to the IRS.

Between October 16 and November 11, 2014, the Trust received three Notices of Appeal of its decision to honor the Notices of Levy.[46]  Both Plaintiffs incorporated each other's appeals and argued that the IRS is a disinterested third-party private debt collector and thus their private property, *i.e.*, their pension benefits, cannot be given to the IRS pursuant to the Notices of Levy. Plaintiffs further state that the Internal Revenue Code is not law, and that they have never been and will never be a "taxpayer," "individual required . . . ," "citizen," or "federal employee." Plaintiffs have never declared any gross income to any withholding agent, and deny that they have ever been required to file W-4 forms with the IRS as their legal status equates to a non-resident alien.  Plaintiffs further denied that they have ever or will ever belong to the United

---

[46]AR at 229–241.

States Government.  Plaintiffs alleged that they have never been properly assessed by any IRS agent that would result in a Notice of Levy to issue, and that the Notices did not include any sworn certification by the IRS.  Plaintiffs contend that they are not required to pay income tax or file income tax returns, and that the Internal Revenue Code only subjects employees of the federal government to levies.

 The Trust determined that Plaintiffs' appeals were untimely under Section 10.01(e) of the Plan document, which requires a claimant to appeal in writing within sixty days from the date of certain benefit determinations.  The Trust contends that according to Section 10.01(e), Amador had sixty days from, at the latest, October 1, 2012, when the Trust began sending his monthly benefits to the IRS.  The Trust did not receive the letter requesting an appeal from Amador until October 16, 2014, nearly two years after the sixty-day deadline of December 1, 2012.  Likewise, the Trust contends that Wilke had sixty days from, at the latest, March 1, 2014, when the Trust began sending his benefits to the IRS.  The Trust did not receive the letter requesting an appeal from Wilke until October 21, 2014, more than five months after the sixty-day deadline of May 1, 2014.

Plaintiffs do not contest the date they received notification of the adverse benefit determination or the date on which they appealed the determination.[47]  Instead, they argue that their appeals are not subject to the sixty-day deadline set out in Section 10.01(e) of the Plan.  Plaintiffs isolate the sentence in the second paragraph of this subsection, which states: "The written notice of appeal must be sent to the Trustees within 60 days after notification of the denial of the application for benefits (or claim)."  Plaintiffs assert that according to this sentence,

---

[47]In their Notices of Appeal, Plaintiffs identify the date of decision as the earlier dates on which the Trust forwarded the Notices of Levy.  AR at 228, 233.

the Plan does not "indicate time limits for appeals on adverse benefit determinations."  Plaintiffs'

argument is without merit.

In this case, Section 10.01(i) states that the Trustees retain discretion to interpret and

apply all provisions of the Plan document.  When an ERISA provider retains this authority in

explicit terms, courts employ a deferential standard of review.[48]  Here, by denying Plaintiffs'

appeals as untimely, the Trustees relied on their interpretation of the language in Section

10.01(e) of the Plan.  Accordingly, it is appropriate to apply an arbitrary and capricious standard

to the Trustee's interpretation of the appeal procedure provision.  Nevertheless, the Court notes

that under either the arbitrary and capricious or de novo standards of review, its determination

would be the same.

In interpreting an ERISA plan, the court examines the plan documents as a whole, and, if

unambiguous, construes them as a matter of law.[49]  In doing so, the court gives "the language its

common and ordinary meaning as a reasonable person in the position of the [plan] participant,

not the actual participant, would have understood the words to mean."[50]  The Court finds that the

Trust's determination regarding the timeliness of Plaintiffs' appeals was not unreasonable.

Every part of the relevant Plan subsection should be read with reference to the whole subsection.

The sixty-day time limit is part of a broader subsection of Section 10.01(e) entitled  "Filing of

Appeal."  That provision states that any claimant who is subject to an adverse benefit

determination has the right to appeal requesting review of the denial or other adverse benefit

determination.  The subsection goes on to state that all appeals must be in writing and state

---

[48]*Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)).

[49]*Admin. Comm. of Wal-Mart Assoc. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004) (citation omitted).

[50]*Id.*

grounds for relief.  Thus, a plain reading of the language as a whole does not support application of the sixty-day time limit in the limited fashion suggested by Plaintiffs.  The subsection does not come under a separate heading, nor is it otherwise distinguished under the Plan.  The Trustees applied the plain language of the Plan setting a time limit for appeals and determined Plaintiffs' appeals were untimely.  It was therefore reasonable for the Trustees to have interpreted the sixty-day time limitation to apply to the adverse benefit decisions with respect to the Notices of Levy, and the undisputed facts that Plaintiffs' Notices of Appeal were untimely.  Thus, this decision cannot be arbitrary or capricious, and the Court will not disturb the Trustee's decision.

### 2.   Whether the Trust is Bound by the Plan to Honor the IRS Notices of Levy

Alternatively, the Trust argues that even if it acted unreasonably in denying Plaintiffs' appeals as untimely, the Court should defer to the Trustees' determination that the Plan document required the Trust to comply with the Internal Revenue Code.  Section 11.07 of the Plan states that the Plan is intended to comply with ERISA and the Internal Revenue Code and regulations, and is to be interpreted and applied consistent with that intent.  In the letters denying Plaintiffs' appeals, the Trust stated that "it must honor a Notice of Levy received from the IRS as Section 401(a)(13) of the Internal Revenue Code provides that plan benefits are subject to attachment by the IRS."[51]

Federal law does not exempt Plaintiffs' pension benefits from the tax levies.  "Section 6321 of the Internal Revenue Code creates a lien for unpaid taxes in favor of the United States upon all property and rights to the property of the taxpayer."[52]  "Under section 6331, the IRS is

---

[51]AR at 241, 244.

[52]*Shanbaum v. United States*, 32 F.3d 180, 183 (5th Cir. 1994); *see* 26 U.S.C. § 6321.

authorized to levy upon all property and rights to property belonging to the taxpayer in order to collect his assessed income tax liabilities."[53]

Section 6334 governs exemptions to tax levies.  Section 6334(c) states that "no property or rights to property shall be exempt from levy other than the property specifically made exempt" under section 6334(a).[54]  Section 6334(a) does not exempt ERISA pension plans, and federal regulations permit unpaid taxes to be collected by levying ERISA plans.[55]  A number of courts have reached the same conclusion.[56]  Thus, Plaintiffs' pension benefits were not exempted from the IRS's tax levies.

Plaintiffs argued in their appeals that the levies were invalid because, *inter alia*, the Internal Revenue Code is not law, Plaintiffs are not taxpayers or required to pay taxes or file income tax returns, they have never been properly assessed by any IRS agent because Form 4340 would have to be attached to the levy for it to be valid, that the levy must have an attached sworn declaration of its veracity, the Trust was required to include a judicial order before reassigning Plaintiffs' benefits, and the Code only subjects employees of the federal government to levies. In their response to Defendant's motion, Plaintiffs argue for the first time that the Notices of

---

[53]*Shanbaum*, 32 F.3d at 183; *see* 26 U.S.C. § 6331.

[54]26 U.S.C. § 6334(c).

[55]*See* 26 C.F.R. § 1.401(a)–13(b)(2)(i) ("A[n ERISA] plan provision satisfying the requirements of subparagraph (1) of this paragraph [requiring ERISA plans to prohibit the alienation of pension benefits] shall not preclude . . . [t]he enforcement of a Federal tax levy made pursuant to section 6331."); *United States v. Debbi*, No. 02 Crim. 808, 2005 WL 1020557, at *2 (S.D.N.Y. Apr. 29, 2005) (noting that ERISA "does not bar garnishment of . . . pension plans for failure to make restitution payments to the Government").

[56]*See, e.g.*, *United States v. Sawaf*, 74 F.3d 119, 124 (6th Cir. 1996) (holding ERISA's anti-alienation provisions did not prohibit the garnishment of taxpayers' ERISA pension funds in order to satisfy judgment for unpaid income taxes); *Shanbaum*, 32 F.3d at 183 (holding the anti-alienation provision of ERISA did not preclude IRS from levying ERISA pension plans); *In re Raihl*, 153 B.R. 615, 618 (B.A.P. 9th Cir. 1993) (holding that "the inalienability of the pension interests does not destroy their character as property or immunize the interest from the attachment of a federal tax lien"); *Suarez v. Verizon Comm'ns Inc.*, No. 11 Civ. 5050(LAP), 2012 WL 4571030, at *4 (S.D.N.Y. Sept. 29, 2012) (concluding ERISA pension plan not exempted from tax levy).

Levy failed to comply with the requirements of a Qualified Domestic Relations Order ("QDRO").

After considering Plaintiffs' arguments, the Trust denied their appeal, explaining that it was required to honor the levies against Plaintiffs' benefits because the Plan required the Trustees to comply with the Internal Revenue Code.  Under section 3662(d) of the Internal Revenue Code, a party holding property of a delinquent taxpayer must comply with the levy or become personally liable for failure to do so.[57]  An administrative levy is a provisional remedy that typically "does not require judicial intervention" or court authorization.[58]  Upon receipt, the Trust forwarded the Notices of Levy to Plaintiffs and requested them to complete the relevant forms.  For whatever reason, Plaintiffs chose not to respond to the Trust's request, and the Trust honored the levies as required by the Internal Revenue Code and the Plan.  Moreover, the administrative record shows that in their notices of appeal, Plaintiffs never raised the argument that the levies did not comply with the requirements of a QDRO.[59]  In considering whether the Trust's decision was arbitrary or capricious, however, this Court may consider only the arguments and evidence before the administrator at the time it made the decision.[60]  An administrator's decision is not arbitrary and capricious for failing to take into account evidence not before it.[61]  Accordingly, there is no evidence that the Trustees acted unreasonably or in bad

---

[57]26 U.S.C. § 6332(d).

[58] *United States v. Rodgers*, 461 U.S. 677, 682 (1983).

[59]AR at 229−38.

[60]*Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1158 (10th Cir. 2010) (citing *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380−81 (10th Cir. 1992)) (citations omitted).

[61]*Id.*

faith, and the decision to honor the levies cannot be considered arbitrary or capricious.  Thus, the

Court also upholds the Trust's decision to honor the tax levies.[62]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for

Summary Judgment (Doc. 29) is GRANTED.

**IT IS SO ORDERED.**

Dated: <u>April 6, 2016</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[62]Moreover, to the extent Plaintiffs allege that the Trust should be liable for complying with the levies, section 6332(e) of the Internal Revenue Code immunizes the Trust from liability for doing so.  26 U.S.C. § 6332(e). Any objections Plaintiffs have to the validity of the underlying tax assessment or to the validity of the tax levies may be pursued against the IRS.  *See* 26 C.F.R. § 301.6343-1, 6343-2.